IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOAN M. OLLICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV927 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Joan M. Ollice ("Plaintiff") brought this action pursuant to Section 1631(c)(3)

of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial

review of a final decision of the Commissioner of Social Security denying her claim for

Supplemental Security Income under Title XVI of the Act. The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed her application for Supplemental Security Income on

September 7, 2011, alleging a disability onset date of June 1, 2005. (Tr. at 19, 113-19.)[1] Her

application was denied initially (Tr. at 60, 62-65) and upon reconsideration (Tr. at 61, 67-70).

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative

Law Judge ("ALJ") (Tr. at 73-75), which she attended on April 11, 2014, along with her

attorney and an impartial vocational expert (Tr. at 19). At the hearing, Plaintiff amended her

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

alleged onset date to September 7, 2011, her application date. (Tr. at 19, 134.) The ALJ ultimately issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 19-29), and, on September 3, 2015, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 5-7).

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, gastroesophageal reflux disease, migraine, borderline intellectual functioning, depression, and anxiety. (Tr. at 21.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. (Tr. at 21-23.) Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the RFC for light work with the following additional limitations:

> The claimant can occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. She should avoid concentrated exposures to moving machinery, hazardous machinery, and

5

unprotected heights. She can perform simple, routine, repetitive tasks with occasional interaction with the general public.

(Tr. at 23.) At step four, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 28.) However, she concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 28-29.)

Plaintiff now argues that the ALJ erred in two respects. First, she contends that, at step three, the ALJ failed to properly consider the applicability of 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 12.05C (hereinafter "Listing 12.05C"). Second, she contends that the ALJ failed to properly incorporate limitations opined by Dr. Joseph Appollo, a consultative examiner, despite assigning Dr. Appollo's opinion significant weight. As discussed below, the Court finds that the ALJ's failure to consider or address Listing 12.05C requires remand in light of the Fourth Circuit's decision in Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013). The Court will therefore recommend remand, and because any other issues raised by Plaintiff can be further addressed on remand, the Court does not reach the additional error alleged by Plaintiff.

As discussed above, at step three of the sequential analysis the ALJ considers whether any impairment meets or equals one or more of the impairments listed in the regulations at 20 CFR Part 404, Subpart P, Appendix 1. In analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d at 295. Where

6

such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011)). Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Id. If the decision does not include sufficient explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. Radford, 734 F.3d at 295.

In the present case, at step three of the sequential analysis, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.06." (Tr. at 22.) In making this finding, the ALJ examined whether Plaintiff's mental impairments met the "paragraph B" criteria of the listings as well as whether Plaintiff's chronic organic mental disorder and anxiety disorder met the "paragraph C" criteria of listings 12.02 and 12.06. (Tr. at 22-23.) However, the ALJ did not mention or address the applicability of Listing 12.05 to the facts of Plaintiff's case. Listing 12.00 covers mental disorders generally, and Listing 12.05 covers Intellectual Disability. Specifically under Listing 12.05,

> [i]ntellectual disability refers to significantly subaverage general intellectual
> functioning with deficits in adaptive functioning initially manifested during the

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. In addition, the required level of severity for this disorder is met if the requirements of parts A, B, C or D are also satisfied. Specifically, Listing 12.05C cited by Plaintiff requires:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C. In other words, a claimant must demonstrate three elements to meet Listing 12.05C: (1) deficits in adaptive functioning manifested before age 22, (2) a valid IQ score between 60 and 70, and (3) another impairment imposing an additional and significant work-related limitation of function. See Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006).

In this case, Plaintiff raised the potential applicability of Listing 12.05 during the administrative proceedings. (Tr. at 182, 439.) However, as discussed above, the ALJ in the present case failed to mention or address Rule 12.05 at all. Therefore, the question is whether there is sufficient evidence in the record to trigger the potential applicability of Listing 12.05C, and if so, whether the ALJ's explanation and analysis, as a whole, is nevertheless sufficient to allow judicial review of the step three determination as to that Listing.

With respect to Listing 12.05C's requirement that the claimant suffer from another impairment "imposing an additional and significant work-related limitation of function," the Listing provides that "the degree of functional limitation the additional impairment(s) imposes" will be analyzed to "determine if it significantly limits [the] physical or mental ability

8

to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00A.  Thus, "[i]f the additional impairment(s) does not cause limitations that are 'severe' as defined in §§ 404.1520(c) and 416.920(c)," the additional impairment would not constitute "an additional and significant work-related limitation of function."  Id.  Here, the ALJ in the present case found that Plaintiff suffered from numerous severe impairments at step two of the sequential analysis (see Tr. at 21), including degenerative disc disease, degenerative joint disease, gastroesophageal reflux disease, and migraines.  There is thus evidence in the record that Plaintiff had "an additional and significant work-related limitation of function."

With respect to Listing 12.05C's requirement that Plaintiff have a valid verbal, performance, or full scale IQ score between 60 and 70, in this case Plaintiff was determined to have a verbal IQ of 66 and a full scale IQ of 73, based on testing in January 2012 during a consultative examination. Defendant admits that Plaintiff achieved a verbal IQ score of 66 and does not challenge the validity of that score.  (Tr. 260; Def.'s Br. [Doc. #13] at 7-8.) However, the ALJ's decision in this case omitted any reference to the verbal IQ score of 66, and instead referenced only Plaintiff's full-scale IQ score of 73.  (Tr. at 26.)  Under the Listing, "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00D.6.c. However, in this case the ALJ did not make a determination that the verbal IQ score of 66 was unreliable, invalid, or should not be considered; indeed, as noted above, the ALJ did not

mention the verbal IQ score of 66 at all. Thus, there is evidence in the record of a verbal IQ score of 60 through 70.

With respect to Listing 12.05C's requirement of "deficits in adaptive functioning initially manifested" before age 22, Listing 12.05C "does not expressly define 'deficits in adaptive functioning' or specify the degree of deficit required (mild versus significant, for example), whether deficits must exist in one, two, or more categories of adaptive functioning, or what methodology should be used to measure deficits in adaptive functioning." Blancas v. Astrue, 690 F. Supp. 2d 464, 476-477 (W.D. Tex. 2010). "'Adaptive activities' are described elsewhere in the [Mental Disorders] Listing . . . as 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office.'" Id. at 476 (quoting 20 C.F.R. part 404, subpt. P, Appendix 1, § 12.00(C)(1)); see also Hawley v. Astrue, No. 1:09CV246, 2012 WL 1268475, at *5 (M.D.N.C. Apr. 16, 2012). More generally, the factfinder may consider "the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." 20 C.F.R. part 404, subpt. P, Appendix 1, § 12.00(C)(1). Social functioning, such as the claimant's ability to get along with others, and limitations in concentration, persistence, or pace, particularly in the workplace, may also impact determinations. 20 C.F.R. part 404, subpt. P, Appendix 1, § 12.00(C)(2)-(3). However, poor school performance generally provides the best, and in many cases the only, direct evidence of adaptive functioning deficits before age 22, as the other activities described in the regulations primarily pertain to adult living situations. See Adams v. Colvin, No. 1:15CV733, 2016 WL 6238559 (M.D.N.C. Oct. 25, 2016).

In this case, the ALJ never explicitly considered whether Plaintiff suffered from deficits in adaptive functioning. Nevertheless, in considering other potentially-applicable Listings, the ALJ found Plaintiff moderately limited in both social functioning and maintaining concentration, persistence, or pace. (Tr. at 22.) These findings suggest adaptive deficits which the ALJ has not addressed in the context of applying Listing 12.05C. See Rothrock v. Colvin, No. 1:13CV497, 2016 WL 1175189, at *7 (M.D.N.C. Mar. 23, 2016); Adams v. Colvin, 2016 WL 6238559; accord Harris v. Colvin, No. 2:13CV28109, 2015 WL 268246, at *16 (S.D.W. Va. Jan. 20, 2015) ("[T]he ALJ's written decision cannot withstand scrutiny. Her findings of moderate limitations in two categories of adaptive functioning [i.e., social functioning and concentration, persistence, or pace], by themselves, tend to negate her unsupported statement that 'the deficits in adaptive functioning needed to establish mental retardation are simply not present.'")). Moreover, the ALJ summarized opinion evidence from Dr. Appollo and two state agency consultants, indicating (1) that Plaintiff's past work was menial, consisting of "various cleaning and factory jobs," (2) that she "was considered minimally capable of dealing with stress and pressure in a routine job environment," and (3) that she "would require guidance and assistance to effectively manage any financial benefits received." (Tr. at 26.) In addition, Plaintiff testified that she has never had a driver's license (Tr. at 429) and that she has problems with reading and can only read about the half the words on a menu if she goes out to eat (Tr. at 422), and Dr. Appollo noted that she "could need assistance with filling out job applications" (Tr. at 260).

The ALJ also failed to consider and address evidence as to Plaintiff's adaptive functioning *prior to age 22*. In discussing Plaintiff's academic skills, the ALJ noted that "school

records included only grade reports, which did indicate struggles with academics, but there was no IEP." (Tr. at 25, 273.)  However, Plaintiff completed the majority of her schooling before IEPs came into formal use.  See P.L. 94-142 (1975); P.L. 106-17 (1997); P.L. 108-446 (2004); see also 20 U.S.C. §§ 1400 et seq.; Bd. of Educ. of the Hendrick Hudson Central Sch. Distr. v. Rowley, 458 U.S. 176 (1982).  Moreover, the ALJ's decision accepts Dr. Appollo's conclusion that Plaintiff completed high school in a special education program (Tr. at 26, 282), which Plaintiff confirmed in her testimony (Tr. at 421), and the school records themselves contain additional information beyond just poor grades.  For instance, Plaintiff's fourth grade teacher specifically indicated that "Joan needs special education."  By fifth grade, Plaintiff still could not read and had only progressed to recognizing "most of the letters of the alphabet" and "easy basic sight words."  (Tr. at 175.)  She failed all standardized tests in high school, with her scores in ninth grade placing her academic abilities at the second or third grade equivalent, or between the first and fourth percentiles, six to seven years behind her peers. (Tr. at 174.)  In twelfth grade, Plaintiff's homeroom teacher noted that Plaintiff had "difficulty filling out forms."  (Tr. at 175.)  Her high school transcripts reflect "practical education" social studies, math, science, and English courses all four years, with failing or barely passing grades. (Tr. at 178.)  In addition, elementary school testing reflects IQ scores of 66, 70, and 78.  (Tr. at 173.)  In short, the record clearly "includes a fair amount of evidence" that Plaintiff had limitations in adaptive functioning, including functional academic skills, which manifested before age 22.  Radford, 734 F.3d at 295.

Defendant, citing various out-of-circuit cases, nevertheless contends that Dr. Appollo's diagnosis of borderline intellectual functioning, later cited by the State agency consultants, by

itself constitutes substantial evidence that Plaintiff does *not* meet Listing 12.05C. (See Def.'s Br. at 10) (see also Tr. at 260-62, 273, 342). However, in considering this contention, the Court notes again that in this case, the ALJ did not address Listing 12.05 at all. In contrast, in the cases cited by Defendant, the ALJs in each case appeared to rely on various evidence, including opinion evidence, in evaluating the Listing. In the present case, while the ALJ gave significant weight to Dr. Appollo's opinion, there is nothing in the ALJ's decision to indicate that that ALJ relied on that opinion to support an unstated conclusion that Plaintiff did not have deficits in adaptive functioning or that Listing 12.05C was otherwise not met.

Moreover, Defendant's argument that a diagnosis of borderline intellectual functioning rules out Listing 12.05C ignores the fact that the mental impairment listings promulgated by the Social Security Administration ("SSA") do not directly track the *Diagnostic and Statistical Manual of Mental Disorders*, or DSM, which mental health providers utilize in practice. In fact, "[i]n revising the Listings of Impairments in 2002, the Commissioner [specifically] rejected a proposal that the DSM's definition be used for Listing 12.05." Maresh, 438 F.3d at 899 (citing 67 Fed. Reg. 20018-01, at *20,022, 2002 WL 661740). Thus, the issue for disability purposes is whether a plaintiff meets the very specific criteria set out in Listing 12.05C, not whether she meets – or fails to meet – the diagnostic criteria for intellectual and adaptive impairment set out elsewhere.

In this case, Dr. Appollo noted that Plaintiff's IQ results were "suggestive of borderline intellectual functioning" and that her "actual IQ score is expected to fall in the range [of] 70 to 77 with a 90% degree of confidence." (Tr. at 260.) In contrast, the SSA regulations do not require an assessment of a claimant's overall IQ; rather, as noted above, "in cases where more

than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Commissioner] use[s] the lowest of these in conjunction with [Listing] 12.05." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00D.6.c (emphasis added). Because of these differing standards, another court in this District has specifically rejected the contention that such opinion evidence of "borderline intellectual functioning" based on an overall IQ score is a sufficient basis to conclude that Listing 12.05C is not met. Leftwich v. Colvin, No. 1:13CV414, 2016 WL 126753, at *8 (M.D.N.C. Jan. 11, 2016) (Auld, J.) In Leftwich, the court concluded that remand was necessary where:

> the ALJ relied on consultative examiner Dr. Sullivan's diagnosis of Plaintiff with "borderline intellectual functioning rather than mental retardation" as support for his ultimate conclusion regarding Listing 12.05C. (Tr. 29-30.) However, Dr. Sullivan's report states that he chose Plaintiff's full scale IQ score of 73, to diagnose borderline intellectual functioning: "The claimant's full scale IQ score indicates she was functioning in a borderline range of intelligence." (Tr. 244.) In contrast, the regulations make clear that, "in cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Commissioner] use[s] the lowest of these in conjunction with [Listing] 12.05." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00D.6.c (emphasis added). Here, Plaintiff's lowest IQ score, her verbal IQ of 70, falls within the range of Listing 12.05C and thus the ALJ should not have relied on Dr. Sullivan's borderline intellectual functioning diagnosis as a basis to find Plaintiff did not meet or equal Listing 12.05C.

Leftwich v. Colvin, 2016 WL 126753, at *8.

Ultimately, Defendant asks this Court to assume that the ALJ considered Listing 12.05C, even though it was not mentioned or addressed, to assume that in considering the Listing the ALJ considered and rejected Plaintiff's Verbal IQ score of 66, even though it was not mentioned or addressed, and to assume that the ALJ's decision to give significant weight to the consultative examiner who diagnosed Plaintiff with borderline intellectual functioning

based on an overall IQ score necessarily means that the ALJ concluded that Plaintiff did not have deficits in adaptive functioning manifested before age 22. It is not the Court's role to engage in such conjecture, and this Court cannot assume or create a rationale that the ALJ did not provide. Moreover, the Court cannot find that the ALJ's failure to analyze Listing 12.05C is harmless. As set out above, there is a fair amount of evidence that would support the potential application of Listing 12.05C. That is not to say that the application of Listing 12.05C is without question here, but there is at least conflicting evidence, and "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Radford, 734 F.3d at 295. The ALJ's failure to address Listing 12.05C is thus more than a "technical error," and is instead a situation where "the ALJ's failure to adequately explain his reasoning precludes this Court . . . from undertaking a 'meaningful review.'" Id., 734 F.3d at 296. Therefore, the appropriate course is to remand the case to the ALJ for further proceedings. In view of this recommendation, the Court need not address additional issues raised by Plaintiff at this time.[4]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further consideration of Plaintiff's claims in light of the above

---

[4] The Court notes that Plaintiff also contends that the ALJ's decision fails to address Plaintiff's limited verbal abilities in the RFC. Plaintiff specifically notes that the ALJ gave significant weight to Dr. Appollo's opinion, which included findings that Plaintiff had weak verbal skills, poor word knowledge and a score of mildly retarded on the verbal portion of the IQ testing, but those limitations were not specifically reflected in the RFC, as evidenced by the fact that the ALJ ultimately concluded that Plaintiff could perform the jobs of office helper and mail clerk, both of which appear to involve duties requiring reading and writing, based on the DOT descriptions. The Court notes that issue but need not consider it further at this time in light of the remand recommended above.

recommendation. Defendant's Motion for Judgment on the Pleadings [Doc. #12] should be

DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9]

should be GRANTED to the extent set out herein.

This, the 2nd day of December, 2016.

    /s/ Joi Elizabeth Peake    
United States Magistrate Judge
